## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ATMUS FILTRATION, INC. )<br>  )<br> Plaintiff, )<br>  )<br>v. )<br>  )<br>U.S. CUSTOMS AND BORDER )<br>PROTECTION; RODNEY S. SCOTT, in )<br>his official capacity as Commissioner of )<br>U.S. Customs and Border Protection; and )<br>the UNITED STATES OF AMERICA )<br>  )<br> Defendants. )<br>  )<br>  ) | Court No. 1:26-cv-01259 |

## COMPLAINT

### I.   INTRODUCTION

1.   Atmus Filtration, Inc., ("Plaintiff") is a U.S.-based importer of merchandise subject to certain challenged customs duties.

2.   Starting in February 2025, President Trump issued a series of executive orders (the "Challenged Orders") invoking the International Emergency Economic Powers Act ("IEEPA") as the basis for imposing significant new tariffs on goods imported from nearly every foreign country, including those from which Plaintiff sources its products. Plaintiff has been required to pay these tariffs (the "Challenged Tariffs") on its imports.

3.   Operation of the Challenged Orders was enjoined[1] by order of this Court pursuant to its combined opinion issued May 28, 2025 in the cases *V.O.S. Selections, Inc. et al v. U.S.*, 1:25-cv-

---

[1] The CIT's permanent injunction of the Challenged Orders was vacated by the Federal Circuit, which remanded on this issue with instruction to reevaluate the propriety of granting injunctive relief and the scope thereof. *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1340 (Fed. Cir. 2025), *cert. granted*, 222 L.Ed.2d 1231, 2025 WL 2601020 (Sept. 9, 2025).

00066-3JP, Dkt. No. 55 and *Oregon, et al. v. Trump, et al*, 1:25-cv-00077, Dkt. No. 65 (the "CIT Opinion"). *V.O.S. Selections, Inc. v. Donald J Trump,* 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), *aff'd,* 149 F.4th 1312 (Fed. Cir. 2025).

4. In the CIT Opinion, this Court determined that the Challenged Orders exceeded the President's authority under IEEPA. *See id.* at 1383.

5. The CIT Opinion was affirmed in relevant part by the Federal Circuit and the Supreme Court. *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1340, 2025 WL 2490634 (Fed. Cir. 2025); *Learning Resources et. al. v. Trump, President of the U.S., et. al.*, No. 24-1287, slip op. at 20–21 (U.S. Feb. 20, 2026) (https://www.supremecourt.gov/opinions/25pdf/24-1287_4gcj.pdf) (hereinafter "*Learning Resources*").

6. Defendants continued to apply the Challenged Duties to Plaintiff's imports until February 24, 2026.

7. Immediate action is required because the entries for which Plaintiff paid IEEPA related tariffs were scheduled to begin liquidating as early as December 15, 2025, and certain of Plaintiff's entries have already liquidated. Plaintiff seeks to prevent any further liquidations to preserve its right to a full refund and intends to file a motion for a preliminary injunction to suspend liquidation.

8. Plaintiff seeks confirmation of what this Court, the Federal Circuit, and the Supreme Court have already held: that the Challenged Orders and derivative duties therefrom are and were unlawful. *See Learning Resources*, slip op. at 20–21.

9. Accordingly, Plaintiff requests: (i) a declaration that the Challenged Tariffs were unlawful; (ii) a preliminary and permanent injunction prohibiting Defendants from imposing additional duties under the Challenged Orders; and (iii) a full refund of all IEEPA duties Plaintiff has paid to

the United States as a result of those orders, as well as any future payments, and interest at the legal rate.[2]

10. The relief sought in this Complaint pertains to all of Plaintiff's current and future entries, regardless of liquidation status. Plaintiff also seeks immediate injunctive relief to suspend further liquidation of Plaintiff's entries subject to the Challenged Tariffs.

## II.   PARTIES

11. Plaintiff is a U.S. Company, registered in Indiana, that has been assessed and paid duties under the Challenged Tariffs.

12. Defendant United States Customs and Border Protection ("CBP") is an agency within the U.S. Department of Homeland Security, headquartered in Washington, D.C. CBP is charged with administering the collection of tariffs, duties, and taxes on imported goods.

13. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity. The United States received the Challenged Tariffs and is a statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581. Section 1581 also waives the United States' sovereign immunity. *See Humane Soc. of U.S. v. Clinton*, 236 F.3d 1320, 1328 (Fed. Cir. 2001).

## III.   JURISDICTION

14. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1334 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sep. 9, 2025).

15. This Court exercises the same legal and equitable authority as a United States District Court. *See* 28 U.S.C. § 1585. In actions brought under 28 U.S.C. § 1581, the Court is empowered

---

[2] As of the filing of this complaint, Plaintiff has paid approximately $11,006,388.78 under the Challenged Tariffs. *See* Exhibits A-B.

to enter monetary judgments against the United States and to grant all appropriate forms of relief, including declaratory and injunctive remedies. *See* 28 U.S.C. §§ 2643(a)(1), (c)(1).

16.     Plaintiff has standing to pursue this action because it is the importer of record for merchandise assessed with unlawful IEEPA duties by CBP. As a direct consequence of the Challenged Orders, Plaintiff paid those duties to the United States and sustained concrete injury. Declaratory and injunctive relief from this Court would remedy these harms. Plaintiff further faces imminent and irreparable injury because entries for which it paid IEEPA became eligible for liquidation as early as December 15, 2025, and certain of Plaintiff's entries have already liquidated.

### IV.    FACTUAL AND LEGAL BACKGROUND

17.     Because the Supreme Court categorically ruled that the International Emergency Economic Powers Act ("IEEPA") does not support the power to levy tariffs, this Complaint challenges the imposition of any tariff levied under that now invalidated authority. Implementation of the Challenged Orders was effected by changes to the Harmonized Tariff Schedule of the United States ("HTSUS").[3] The history of those now invalidated orders is outlined below.

**The Trafficking Tariffs**

18.     On February 1, 2025, the President issued three country-specific executive orders under IEEPA imposing additional duties on imports from Canada (EO 14193, or the "Canada Tariff

---

[3] Specifically, Plaintiff paid unlawfully levied duties under the following HTSUS: 9903.01.01 (Mexico Trafficking), 9903.01.10 (Canada Trafficking), 9903.01.20 (China Trafficking), 9903.01.24 (China Trafficking), 9903.01.25 (Default Reciprocal), 9903.01.63 (China Reciprocal), 9903.01.77 (Brazil Specific IEEPA), 9903.01.84 (India Specific IEEPA), 9903.02.07 (Bosnia Reciprocal), 9903.02.09 (Brazil Reciprocal), 9903.02.20 (European Union Reciprocal), 9903.02.26 (India Reciprocal), 9903.02.27 (Indonesia Reciprocal), 9903.02.56 (South Korea Reciprocal), 9903.02.58 (Switzerland Reciprocal), 9903.02.60 (Taiwan Reciprocal), 9903.02.63 (Tunisia Reciprocal), 9903.02.64 (Turkey Reciprocal), 9903.02.66 (United Kingdom Reciprocal), 9903.02.69 (Vietnam Reciprocal), 9903.02.80 (South Korea Reciprocal, Adjustment), 9903.02.83 (Switzerland Reciprocal, Adjustment).

Order"),[4] Mexico (EO 14194, or the "Mexico Tariff Order"),[5] and the People's Republic of China ("PRC") (EO 14195, or the "China Tariff Order").[6] In each order, the President declared an unusual and extraordinary threat tied to drug trafficking and associated public-health and security harms, and invoked IEEPA as the asserted authority to impose duties to address those emergencies. For clarity, this complaint refers to these three country-specific IEEPA tariff actions collectively as the "Trafficking Tariff Orders" or "Trafficking Tariffs."

19. The Canada Tariff Order (EO 14193) imposed additional duties—including 25% for most products—with adjustments (*e.g.*, 10% for certain energy products) and pauses to effective dates noted in later presidential actions.

20. The Mexico Tariff Order (EO 14194) imposed an additional 25% ad valorem duty on imports of Mexican products. Subsequent amendments adjusted timing and certain conditions (including treatment of de minimis entries) but left the 25% baseline intact.

21. The China Tariff Order (EO 14195) initially set an additional 10% ad valorem duty on products of China based on findings regarding the synthetic-opioid supply chain. On March 3, 2025, EO 14228[7] raised the duty to 20%, citing China's failure to alleviate the crisis.

**The Reciprocal Tariffs**

22. Subsequently, and separately from the Trafficking Tariffs, the President announced a global "Reciprocal Tariff" regime on April 2, 2025 via EO 14257,[8] declaring a national emergency

---

[4] Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border,* 90 Fed. Reg. 9,113 (Feb. 7, 2025).
[5] Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border,* 90 Fed. Reg. 9,117 (Feb. 7, 2025).
[6] Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 9,121 (Feb. 7, 2025).
[7] Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025).
[8] Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits,* 90 Fed. Reg. 15,041 (Apr. 7, 2025).

premised on large and persistent annual U.S. goods trade deficits and lack of reciprocity in tariff rates. EO 14257's findings concluded that disparate tariff rates/non-tariff barriers, and certain foreign economic policies suppressing wages and consumption collectively pose an unusual and extraordinary threat to U.S. national and economic security—thus warranting action under IEEPA.

23.     This action set a baseline 10% duty on nearly all imports, plus higher country-specific rates (ranging from 11%-50%) listed in Annex I to EO 14257, with multiple adjustments in subsequent executive orders. This complaint refers to EO 14257 and its amendments collectively as the "Reciprocal Tariffs." The Reciprocal Tariffs also relied on the purported authority of IEEPA, and declared a national emergency tied to structural trade imbalances. The Reciprocal Tariffs were implemented in addition to other applicable duties and subject to periodic exceptions and product-list updates.

24.     On April 8, 2025, the White House issued EO 14259[9] to raise the applicable PRC rate established in EO 14257 by 50%, in response to announced PRC retaliation; on April 9, 2025, EO 14266 further modified reciprocal rates to reflect ongoing retaliation and alignment, with later adjustments and extensions in July and September 2025.

25.     Certain Reciprocal Tariff modifications temporarily paused or reduced rates for trading partners deemed to be taking steps toward alignment or reciprocal agreements, while maintaining or increasing rates for others (including the PRC) pending negotiations; these changes were explained in subsequent Executive Orders and White House fact sheets.[10]

---

[9] Exec. Order No. 14259, Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China, 90 Fed. Reg. 15509 (Apr. 14, 2025).

[10] *See, e.g.* Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment* (Apr. 9, 2025) 90 Fed. Reg. 15625 (Apr. 15, 2025); Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment* (Apr. 9, 2025) 90 Fed. Reg. 15625 (Apr. 15, 2025) (EO 14266 further modified the Reciprocal Tariffs against the PRC, which combined with the Trafficking Tariffs, resulted at one point in a duty rate of 145% of IEEPA related tariffs).

26. To implement the Reciprocal Tariffs, CBP published notices modifying HTSUS, and issued Cargo Systems Messaging Service (CSMS) bulletins detailing reporting exceptions and secondary classifications for Reciprocal Tariff exclusions.

**Additional IEEPA Tariffs**

27. In the summer of 2025, President Trump announced additional IEEPA tariffs against Brazil and India (collectively, the "Additional IEEPA Tariffs"). The tariffs against Brazil were issued July 30, 2025 to address a national emergency based on that country's alleged political persecution of its former president.[11] The tariffs against India were issued August 6, 2025 to address a national emergency based on India's alleged violation of sanctions imposed against the Russian Federation.[12]

28. As with the Reciprocal and Trafficking Tariffs, the Additional IEEPA Tariffs rely on purported authority under IEEPA which has since been invalidated.

**Liquidation and the Role of CBP**

29. CBP is responsible for the implementation of the Challenged Orders, a process it conducts by assessing the relevant tariff rates under the HTSUS and culminating in a process known as "liquidation." "Liquidation" is the final computation or ascertainment of duties on entries for consumption. 19 C.F.R. § 159.1.

30. Once CBP "liquidates" an entry it notifies the importer of record as to whether they owe more money or are entitled to a refund. *See* 19 U.S.C. § 1504(b).

---

[11] Exec. Order No. 14323, *Addressing Threats to the United States by the Government of Brazil*, 90 Fed. Reg. 37739 (Jul. 30, 2025).
[12] Exec. Order No. 14329, *Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 338701 (Aug. 6, 2025).

31.     Liquidation—unless extended—must happen within one year. *See* 19 U.S.C. § 1504(a). However, CBP may extend the deadline for liquidation for a further year. 19 U.S.C. § 1504(b)(2); 19C.F.R. § 159.12(a)(l)(ii). Liquidation typically occurs 314 days from entry.

32.     The China Tariff Orders became effective on February 4, 2025, meaning many entries subject to those orders will begin to liquidate on or around December 15, 2025.

33.     The Canadian and Mexican Tariff Orders became effective on March 4, 2025, meaning many entries subject to those orders began to liquidate on or around January 12, 2026.

34.     The Reciprocal Tariff Orders for many countries became effective on April 5, 2025, meaning many entries subject to those orders began to liquidate on or around February 13, 2026.

35.     The Additional IEEPA Tariffs became effective August 6, 2025 (Brazil) and August 27, 2025 (India), meaning entries subject to those orders will begin to liquidate on or around June 16, 2026 and July 7, 2026.

36.     This Court may in its equitable authority suspend liquidation. *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1365-66 (Ct. Int'l Trade 2021).

37.     Once an entry has liquidated, the importer of record generally has 180 days to file a protest if the liquidation is protestable. This protest asks CBP to "reliquidate" the duties. *See* 19 U.S.C. § 1514.

38.     However, when CBP acts in a purely ministerial role—meaning it applies duties without exercising discretion—the liquidation cannot be challenged. *Id.*; *see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024).

39.     Both this Court and the Federal Circuit have emphasized that importers may lack any legal entitlement to recover duty refunds on entries that have already liquidated, even if the tariff later

8

proves unlawful. *See In re Section 301 Cases*, 524 F. Supp. 3d at 1365–66; *Target Corp. v. United States*, 134 F.4th 1307, 1316 (Fed. Cir. 2025).[13] For that reason, this complaint also seeks preliminary and permanent injunctive relief against the liquidation of certain of Plaintiff's entries.

**Plaintiff paid tariffs under the Challenged Duties**

40. Plaintiff has paid the United States duties imposed by the Challenged Tariffs issued pursuant to the Challenged Orders.

41. Plaintiff's merchandise subject to the Challenged Tariffs entered the United States under newly designated HTSUS provisions from various foreign countries.

42. Plaintiff has consistently paid the Challenged Tariffs under those new headings.

43. As a general matter, the entries for which Plaintiff paid the Challenged Tariffs became eligible to liquidate on or after December 15, 2025, and continue to liquidate on an ongoing basis.

**IEEPA does not authorize the Challenged Orders or Challenged Tariffs**

44. As discussed above, the Supreme Court has held that IEEPA does not authorize the president to impose tariffs. *See Learning Resources*, slip op. at 20–21.

45. Those powers that IEEPA does confer, including to investigate and "regulate" importations, do not extend to the authority to impose tariffs. *See* 50 U.S.C. § 1701(a). *See also Learning Resources*, slip op. at 16 ("Our task today is to decide only whether the power to 'regulate

---

[13] Plaintiff acknowledges that a recent decision issued by a panel of this Court denied preliminary injunctive relief in a substantially similar case on the grounds that (1) the CIT does have the authority to order reliquidation in this context, and (2) the Department of Justice would be estopped from taking a contrary position after it stipulated in that case that it would not oppose reliquidation. *AGS Co. Auto. Sols. v. U.S. Customs & Border Prot.*, 25-00255, 2025 WL 3634261, at *3–4 (Ct. Int'l Trade Dec. 15, 2025). Notwithstanding the Court's assertion of authority in *AGS Co.*, the question has not yet been ruled upon by the Federal Circuit and thus the ultimate availability of reliquidation remains subject to significant doubt. Furthermore, the Department of Justice has not yet stipulated or taken a position on reliquidation of Plaintiff's specific entries, and thus a substantial portion of the Court's rationale in the *AGS Co.* decision is as yet inapplicable here.

. . . importation,' as granted to the President in IEEPA, embraces the power to impose tariffs. It does not.").

46. Because the President's claimed authority to issue the Challenged Orders cannot be found in IEEPA, the Challenged Orders and Challenged Tariffs are *ultra vires* and unlawful as against Plaintiff.

## V. CAUSES OF ACTION

### Count I: The Challenged Tariffs are *ultra vires* under *Learning Resources*.

47. Plaintiff reasserts and incorporates by reference the above-stated paragraphs as if fully set forth herein.

48. Pursuant to the Supreme Court, the Challenged Orders exceed the authority of the President under Sections 1702 and 1701(b) of the IEEPA and are therefore invalid. *Learning Resources*, slip op. at 16, 20–21.

49. The Challenged Tariffs were imposed upon Plaintiff pursuant to invalid orders, and are also therefore also invalid.

50. Consequently, the assessment of tariffs issued against Plaintiff's imports pursuant to the Challenged Orders is likewise unlawful, and Plaintiff seeks declaratory and injunctive relief to protect itself against the unlawful implementation of the same, as well as a refund of prior amounts paid, with interest at the legal rate.

### Count II: Declaratory relief under 28 U.S.C. § 2201.

51. Plaintiff reasserts and incorporates by reference the above-stated paragraphs as if fully set forth herein.

52. This Court has authority to grant declaratory relief pursuant to 28 U.S.C. § 2201.

53. Plaintiff is an importer of record and has suffered an actual injury by paying duties assessed by the Challenged Tariffs.

54. Plaintiff's claims present an actual controversy as to the Defendant's responsibility to refund tariffs levied under the now invalidated authority of IEEPA.

55. Any present or future tariffs imposed upon Plaintiff pursuant to the Challenged Orders, which have been held unlawful by the CIT and Federal Circuit, are likewise unlawful and invalid, and Plaintiff is entitled to declaratory relief to that effect, which this court may issue under 28 U.S.C. § 2201 and its own inherent equitable authority.

## PRAYER FOR RELIEF

56. WHEREFORE, Plaintiff prays for judgment in its favor that:

   a. Declares that the President lacked the authority under IEEPA to issue the Challenged Orders;

   b. Declares that the collection by Defendants of tariffs pursuant to the Challenged Orders is and was *ultra vires* and *void ab initio* with respect to Plaintiff;

   c. Declares that with respect to Plaintiff, CBP lacked the authority to implement and collect tariffs under the HTSUS based on the Challenged Orders;

   d. Declares that with respect to Plaintiff, CBP lacks the authority to liquidate entries made under HTSUS headings pursuant to the Challenged Orders, and that any prior liquidation of such entries is null and void.

e. Orders Defendants to refund to Plaintiff all funds paid pursuant to the Challenged Orders, including where necessary via reliquidation of Plaintiff's entries, as well as interest at the legal rate;

f. Enjoins, as against Plaintiff, Defendants from any further application of duties as set forth in the HTSUS based upon the Challenged Orders or Challenged Tariffs;

g. Enjoins Defendants from further liquidation of any entries to which Challenged Tariffs have been applied;

h. Awards Plaintiff the costs of suit incurred herein and such other and further relief as this Court deems appropriate and just under the circumstances;

Dated: February 27, 2026               **COZEN O'CONNOR**

/s/ *Thomas G. Wallrich*
Thomas G. Wallrich (MN Bar #0213354)
Heather L. Marx (MN Bar #321163)
150 South Fifth Street, Suite 1200
Minneapolis, MN 55402
(612) 260-9002
twallrich@cozen.com
hmarx@cozen.com

*Attorneys for Plaintiff*

# Exhibit A

| 2025 IEEPA TOTALS PAID BY HEADING | |
|---|---|
| **HTSUS Heading** | **Amount Paid** |
| **99030101** | **$5,260,657.00** |
| Mar | $2,318,242.50 |
| Apr | $1,917,679.25 |
| May | $585,726.75 |
| Jun | $439,008.50 |
| **99030110** | **$1,723.25** |
| Mar | $1,445.50 |
| Apr | $277.75 |
| **99030120** | **$51,938.50** |
| Feb | $3,396.60 |
| Mar | $48,541.90 |
| **99030124** | **$741,621.60** |
| Mar | $89,989.40 |
| Apr | $364,351.20 |
| May | $158,829.00 |
| Jun | $128,452.00 |
| **99030125** | **$1,396,842.90** |
| Apr | $172,248.10 |
| May | $565,238.20 |
| Jun | $659,356.60 |
| **99030163** | **$142,008.75** |
| Apr | $24,263.75 |
| May | $117,745.00 |
| **99030101** | **$214,412.00** |
| Jul | $84,713.00 |
| Aug | $39,705.25 |
| Sep | $32,540.75 |
| Oct | $25,722.00 |
| Nov | $16,980.50 |
| Dec | $14,750.50 |
| **99030110** | **$1,706.60** |
| Sep | $940.80 |
| Oct | $765.80 |
| **99030124** | **$410,180.80** |
| Jul | $143,649.40 |
| Aug | $119,420.80 |
| Sep | $56,205.80 |
| Oct | $41,713.60 |
| Nov | $17,633.60 |

1

| | | |
|---|---|---|
| | Dec | $31,557.60 |
| **99030125** | | **$1,088,642.90** |
| | Jul | $513,245.50 |
| | Aug | $358,668.60 |
| | Sep | $150,213.20 |
| | Oct | $26,704.90 |
| | Nov | $26,076.80 |
| | Dec | $13,733.90 |
| **99030177** | | **$723.20** |
| | Sep | $181.60 |
| | Nov | $359.20 |
| | Dec | $182.40 |
| **99030184** | | **$83,562.00** |
| | Sep | $33,012.75 |
| | Oct | $8,363.75 |
| | Nov | $16,957.00 |
| | Dec | $25,228.50 |
| **99030207** | | **$235.50** |
| | Sep | $103.20 |
| | Oct | $36.30 |
| | Nov | $54.00 |
| | Dec | $42.00 |
| **99030209** | | **$168.30** |
| | Sep | $45.40 |
| | Nov | $77.30 |
| | Dec | $45.60 |
| **99030220** | | **$97,013.70** |
| | Aug | $253.20 |
| | Sep | $23,257.65 |
| | Oct | $19,473.75 |
| | Nov | $15,378.00 |
| | Dec | $38,651.10 |
| **99030226** | | **$95,163.50** |
| | Aug | $13.25 |
| | Sep | $50,427.00 |
| | Oct | $6,320.25 |
| | Nov | $15,512.25 |
| | Dec | $22,890.75 |
| **99030227** | | **$2,943.10** |
| | Sep | $1,864.85 |
| | Oct | $104.69 |
| | Nov | $486.97 |

2

|  |  |  |
|---|---|---|
|  | Dec | $486.59 |
| **99030256** |  | **$7,630.65** |
|  | Sep | $4,577.70 |
|  | Oct | $2,507.25 |
|  | Nov | $100.80 |
|  | Dec | $444.90 |
| **99030258** |  | **$4.68** |
|  | Oct | $2.73 |
|  | Dec | $1.95 |
| **99030260** |  | **$5,698.40** |
|  | Sep | $4,863.80 |
|  | Nov | $713.80 |
|  | Dec | $120.80 |
| **99030263** |  | **$2,041.50** |
|  | Sep | $790.25 |
|  | Oct | $483.25 |
|  | Nov | $407.75 |
|  | Dec | $360.25 |
| **99030264** |  | **$20,209.80** |
|  | Aug | $8.55 |
|  | Sep | $4,326.15 |
|  | Oct | $1,774.80 |
|  | Nov | $8,524.65 |
|  | Dec | $5,575.65 |
| **99030266** |  | **$2,974.20** |
|  | Aug | $40.60 |
|  | Sep | $1,971.30 |
|  | Oct | $116.10 |
|  | Nov | $487.80 |
|  | Dec | $358.40 |
| **Grand Total** |  | **$9,628,102.83** |

3

# Exhibit B

| 2026 IEEPA TOTALS PAID BY HEADING | |
|---|---:|
| **HTSUS Heading** | **Amount Paid** |
| **99030101** | **$142,797.75** |
| Jan | $104,583.75 |
| Feb | $38,214.00 |
| **99030110** | **$33,559.40** |
| Jan | $30,878.40 |
| Feb | $2,681.00 |
| **99030124** | **$162,522.90** |
| Jan | $118,255.70 |
| Feb | $44,267.20 |
| **99030125** | **$80,918.10** |
| Jan | $60,364.30 |
| Feb | $20,553.80 |
| **99030177** | **$7.60** |
| Jan | $7.60 |
| **99030184** | **$281,608.75** |
| Jan | $137,488.50 |
| Feb | $144,120.25 |
| **99030207** | **$182.40** |
| Jan | $48.00 |
| Feb | $134.40 |
| **99030209** | **$7.70** |
| Jan | $1.90 |
| Feb | $5.80 |
| **99030220** | **$190,246.95** |
| Jan | $136,864.95 |
| Feb | $53,382.00 |
| **99030226** | **$283,268.75** |
| Jan | $137,488.50 |
| Feb | $145,780.25 |
| **99030227** | **$7,809.95** |
| Jan | $5,141.59 |
| Feb | $2,668.36 |
| **99030260** | **$11,030.40** |
| Jan | $4,829.80 |
| Feb | $6,200.60 |
| **99030263** | **$955.50** |
| Jan | $892.50 |
| Feb | $63.00 |
| **99030264** | **$155,545.35** |
| Jan | $102,961.35 |
| Feb | $52,584.00 |

| | |
|---|---:|
| **99030266** | **$2,935.80** |
| Jan | $2,181.70 |
| Feb | $754.10 |
| **99030269** | **$0.20** |
| Feb | $0.20 |
| **99030280** | **$24,886.65** |
| Jan | $21,121.05 |
| Feb | $3,765.60 |
| **99030283** | **$1.80** |
| Feb | $1.80 |
| **Grand Total** | **$1,378,285.95** |