## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE
              THE HONORABLE
              THE HONORABLE

| | |
|---|---|
| ATMUS FILTRATION, INC.<br><br>    Plaintiff,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA<br><br>    Defendants. | Court No. 1:26-cv-01259 |

## ORDER

AND NOW, this _____ day of February, 2026, upon consideration of Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction Limited to Suspension of Liquidation, and any response thereto, it is hereby:

**ORDERED** that Plaintiff's motion for a Temporary Restraining Order is **GRANTED.** Defendants, together with their delegates together with their delegates, officers, agents, and servants, including employees of U.S. Customs and Border Protection, are temporarily enjoined from liquidating any of Plaintiff's unliquidated entries to which tariffs have been applied pursuant to the President's now invalidated authority under the International Emergency Economic Powers Act, pending further order of this Court. This Temporary Restraining Order shall remain in effect

until [_____] unless extended under Rule 65(b), or otherwise modified or dissolved by this Court.

**ORDERED** that a hearing on Plaintiff's Motion for Preliminary Injunction is scheduled for [_____] to be heard [_____]. Defendants shall file any opposition by [_____]. Plaintiff may file any reply by [_____].

**ORDERED** that the entries subject to this TRO and any subsequent preliminary injunction shall be liquidated in accordance with the final court decision in this action, including all appeals and remand proceedings; and it is further

**ORDERED** that any entries inadvertently liquidated after this order is signed, but before this order is fully implemented by Defendants, shall be promptly returned to unliquidated status and suspended in accordance with this order.


Dated: _____          /s/ _____
       New York, NY                [Judge's Name]
                                   Judge/Chief Judge

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:   THE HONORABLE
          THE HONORABLE
          THE HONORABLE

| | | |
|---|---|---|
| ATMUS FILTRATION, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Court No. 1:26-cv-01259 |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) ) | |

**PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION LIMITED TO SUSPENSION OF LIQUIDATION**

Pursuant to Rule 65, Plaintiff Atmus Filtration, Inc. ("Plaintiff") respectfully moves this Court to enter a temporary restraining order ("TRO") and protective preliminary injunction limited to suspending liquidation of all unliquidated entries imported by Plaintiff for which tariffs have been imposed under certain invalidated executive orders issued under the International Emergency Economic Powers Act ("IEEPA"). Without injunctive relief, Plaintiff's entries face imminent liquidation, which may infringe on Plaintiff's right to a complete recovery in this case. Preliminary injunctive relief is therefore necessary to preserve Plaintiff's right to obtain meaningful judicial review of its claims. The relief requested herein is narrowly tailored and imposes minimal administrative burden on the government, and by bringing this Motion, Plaintiff merely seeks to preserve the status quo.

## I. BACKGROUND

The lawsuit in this case challenges the imposition of unlawful tariffs under a series of executive orders (the "Challenged Orders")[1] which were purportedly issued pursuant to presidential authority under IEEPA. However, this Court, the Federal Circuit, and the Supreme Court have already determined that the President lacked authority under IEEPA to issue such orders. *V.O.S. Selections, Inc. v. Donald J Trump,* 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), *aff'd,* 149 F.4th 1312 (Fed. Cir. 2025); *see also Learning Resources et. al. v. Trump, President of the U.S., et. al.*, No. 24-1287, slip op. at 20–21 (U.S. Feb. 20, 2026) (https://www.supremecourt.gov/opinions/25pdf/24-1287_4gcj.pdf) (hereinafter "*Learning Resources*").

The Challenged Orders fall into three categories. First, the President issued certain orders applicable to three countries to address a perceived crisis in the flow of illicit drugs into the United States (the "Trafficking Orders"). The Trafficking Orders consist of EOs 14193 (Canada), 14194 (Mexico), 14195 (the People's Republic of China), and any subsequent orders modifying them.

---

[1] The Challenged Executive Orders consist of the following, as well as any subsequent or additional orders implementing or modifying them:
Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border,* 90 Fed. Reg. 9,113 (Feb. 7, 2025);
Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border,* 90 Fed. Reg. 9,117 (Feb. 7, 2025);
Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 9,121 (Feb. 7, 2025);
Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025);
Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025);
Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits,* 90 Fed. Reg. 15,041 (Apr. 7, 2025);
Exec. Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15509 (Apr. 14, 2025);
Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment* (Apr. 9, 2025) 90 Fed. Reg. 15625 (Apr. 15, 2025);
Exec. Order No. 14323, *Addressing Threats to the United States by the Government of Brazil*, 90 Fed. Reg. 37739 (Jul. 30, 2025);
Exec. Order No. 14329, *Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 338701 (Aug. 6, 2025

The second category are the Reciprocal Orders, which were purportedly issued to address a national emergency created by trade imbalances resulting from tariffs and non-tariff barriers imposed by other countries, and consist of EO 14257 (the initial reciprocal tariff order), EO 14266 (a subsequent modification), and any other subsequent executive orders modifying them.

Thirdly, the President issued certain reciprocal orders targeting specific countries under IEEPA for purported threats unique to those countries, including EO 14323 (Brazil) and EO 14329 (India).

The decision of the Court of International Trade holding the Challenged Orders unlawful was affirmed in relevant part by the Federal Circuit and subsequently by the Supreme Court. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Circ. 2025), *affirmed*, *Learning Resources*, slip op. at 20–21. In their lifespan, tariffs issued pursuant to the Challenged Orders caused substantial harm to companies, consumers, and the broader U.S. economy. Not all the damage caused by these tariffs can be undone. The purpose of this lawsuit, and in turn this Motion, is to maximize the amount that can.

In litigation over tariffs imposed pursuant to Section 301 of the Trade Act of 1974, the Department of Justice ("DOJ") has taken the position that even if plaintiffs are ultimately successful in a case challenging imposed tariffs, only those tariffs which have been applied, but not already liquidated are recoverable. *See e.g. In re Section 301 Cases*, Court No. 21-00052-3JP, ECF No. 304 at 36 (Ct. Int'l Trade 2021). Uncertainty as to whether the DOJ will take the same position in this case necessitates this Motion to preserve Plaintiff's ability to recover unlawfully assessed tariffs after a judgment in their favor.

## II.     RELEVANT FACTS

Plaintiff is an importer of record who paid tariffs under the Challenged Orders that are the subject of this action. Plaintiff has thus far paid approximately $11,006,388.78 under the unlawful tariffs. *See* Exhibits A and B.[2] Plaintiff paid estimated duties assessed and collected by the U.S. Customs and Border Protection ("CBP") under the direction of its Commissioner, Rodney Scott, and pursuant to the Challenged Orders and their modifications to the HTSUS. The United States, the CBP, and Commissioner Scott will be referred to collectively as "Defendants."

The entries for which plaintiff paid estimated duties became eligible to liquidate on or after Dec. 15, 2025. Once an entry has liquidated, the importer of record generally has 180 days to file a protest if the liquidation is protestable. This protest asks CBP to "reliquidate" the duties. *See* 19 U.S.C. § 1514. However, in certain circumstances, such as when CBP acts in a purely ministerial role—meaning it applies duties without exercising discretion—the liquidation cannot be challenged. *Id.*; *see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024). Both this Court and the Federal Circuit have emphasized that importers may lack any legal entitlement to recover duty refunds on entries that have already liquidated, even if the tariff later proves unlawful. *See In re Section 301 Cases*, 524 F. Supp. 3d at 1365–66; *Target Corp. v. United States*, 134 F.4th 1307, 1316 (Fed. Cir. 2025).[3]

---

[2] Plaintiff paid the Challenged Tariffs for entries made under the following HTSUS: 9903.01.01 (Mexico Trafficking), 9903.01.10 (Canada Trafficking), 9903.01.20 (China Trafficking), 9903.01.24 (China Trafficking), 9903.01.25 (Default Reciprocal), 9903.01.63 (China Reciprocal), 9903.01.77 (Brazil Specific IEEPA), 9903.01.84 (India Specific IEEPA), 9903.02.07 (Bosnia Reciprocal), 9903.02.09 (Brazil Reciprocal), 9903.02.20 (European Union Reciprocal), 9903.02.26 (India Reciprocal), 9903.02.27 (Indonesia Reciprocal), 9903.02.56 (South Korea Reciprocal), 9903.02.58 (Switzerland Reciprocal), 9903.02.60 (Taiwan Reciprocal), 9903.02.63 (Tunisia Reciprocal), 9903.02.64 (Turkey Reciprocal), 9903.02.66 (United Kingdom Reciprocal), 9903.02.69 (Vietnam Reciprocal), 9903.02.80 (South Korea Reciprocal, Adjustment), 9903.02.83 (Switzerland Reciprocal, Adjustment).

[3] Plaintiff acknowledges that a recent decision issued by a panel of this Court denied preliminary injunctive relief in a substantially similar case on the grounds that 1) the CIT does have the authority to order reliquidation in this context, and 2) the Department of Justice would be estopped from taking a contrary position after it stipulated in that case that it would not oppose reliquidation. *AGS Co. Auto. Sols. v. U.S. Customs & Border Prot.*, 25-00255, 2025 WL 3634261, at *3–4 (Ct. Int'l Trade Dec. 15, 2025). Notwithstanding the assertion of authority in *AGS Co.*, the question has not yet been ruled upon by the Federal Circuit and thus the ultimate availability of reliquidation

4

For that reason, this Motion seeks preliminary injunctive relief to suspend liquidation, and thus to preserve Plaintiff's ability to recover sums paid to the United States.

### III.  LEGAL STANDARD

The Court has discretion to grant a preliminary injunction if (1) Plaintiffs are "likely to succeed on the merits," (2) Plaintiffs are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [Plaintiffs'] favor," and (4) the provision of interim relief "is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "The factors considered in ruling on a temporary restraining order mirror those on motions for a preliminary injunction." *AirBoss Def. Grp., LLC v. United States*, 2024 WL 3408845 (Fed. Cl. 2024).

Federal courts employ "a sliding-scale approach: the more the balance of irreparable harm inclines in plaintiff's favor, the smaller the likelihood of prevailing on the merits he need show in order to get the injunction." *Qingdao Taifa Grp. Co. v. United States*, 581 F.3d 1375, 1378-79 (Fed. Cir. 2009) (citations omitted). This Court has previously granted preliminary injunctive relief in the form of suspending liquidation. *See In re Section 301 Cases*, 524 F. Supp 3d 1355, 1372 (Ct. Int'l Trade 2021).

This Court may issue a temporary restraining order without written or oral notice to the adverse party if Plaintiff states "specific facts in an affidavit or verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and [Plaintiff's] attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(A)-(B).

---

remains subject to significant doubt.  Furthermore, the Department of Justice has not yet stipulated or taken a position on reliquidation of Plaintiff's specific entries, and thus a substantial portion of the Court's rationale in the *AGS Co.* decision is as yet inapplicable here.

5

## IV.  ARGUMENT

Considering the limited, protective relief Plaintiff seeks, Plaintiff easily satisfy the factors for a temporary restraining order and preliminary injunction. If the duties paid by Plaintiff are liquidated, Plaintiff may face irreparable harm as a matter of law, as those sums may thereafter be unrecoverable.

### A.  Plaintiff is likely to succeed on the merits

Plaintiff is highly likely to succeed on the merits, given that the Supreme Court has already determined that IEEPA offers no authority to the President to implement tariffs. *Learning Resources*, slip op. at 16 ("Our task today is to decide only whether the power to 'regulate . . . importation,' as granted to the President in IEEPA, embraces the power to impose tariffs. It does not.").

### B.  Plaintiff risks suffering irreparable harm absent preliminary injunctive relief

Plaintiff is entitled to a TRO and preliminary injunction to suspend liquidation due to the clear risk of irreparable harm without such relief. Liquidation of entries subject to unlawful duties causes irreparable harm because the importer may be legally barred from recovering those duties post-liquidation, even when the tariff regime is later found unlawful. *In re Section 301 Cases,* 524 F. Supp. 3d 1355, 1365-66 (Ct. Int'l Trade 2021). The Federal Circuit similarly recognizes that, following liquidation, importers can lose the legal right to recover duty refunds, reinforcing that monetary injury is irreparable where the remedy is jurisdictionally or statutorily foreclosed. *See Target Corp. v. United States*, 134 F.4th 1307, 1316 (Fed. Cir. Apr. 21, 2025).

Plaintiff anticipates that Defendants may contend that the tariffs collected pursuant to the Challenged Orders were assessed in a purely ministerial capacity, thus making them non-

6

protestable and irrecoverable after liquidation, despite the Supreme Court's final determination of invalidity. *See* 19 U.S.C. § 1514; *see also Rimco Inc. v. United States,* 98 F.4th 1046, 1053 (Fed. Cir. 2024). Plaintiff does not concede this point,[4] but Defendants expected resistance and certain Federal Circuit case law present a considerable risk of irreparable harm.

Plaintiff's entries have already begun to liquidate, and will continue to do so on a rolling basis, necessitating both immediate relief in the form of a TRO, and further relief in the form of a preliminary injunction.

C.    **The balance of equities and public interest weigh entirely in Plaintiff's favor**

The balance of the equities and the public interest weigh in Plaintiffs' favor. Defendants face no downside risk. CBP has already announced a policy to cease collection of the Challenged Tariffs as of February 24, 2025. *See* U.S. Customs & Border Prot., Cargo Sys. Messaging Serv., CSMS #67834313, *Ending Collection of International Emergency Economic Powers Act Duties* (Feb. 22, 2026), https://content.govdelivery.com/bulletins/gd/USDHSCBP-40b11c9. If the position that unlawfully assessed tariffs are not recoverable post-liquidation prevails, and Plaintiff wins their case without the relief sought in this Motion, Plaintiff stands to lose money it is legally entitled to. If that same position is adopted, but Plaintiff wins their case with the relief sought in this Motion, the government merely faces some minor administrative burden through delay in the liquidation process. And of course, if a contrary position on the recoverability of unlawful tariffs post-liquidation is adopted, the only harm is the minor burden of delay in liquidation.

A TRO and preliminary injunctive relief is also in the public interest, because it ensures compliance with governing statutes and judicial determinations, and prevents the unlawful exaction of duties contrary to the Supreme Court's ruling. The relief sought herein will preserve

---

[4] Case law suggesting that even unlawfully assessed tariffs are irrecoverable after liquidation is cited above. Whether that case law applies in these specific circumstances has not yet been judicially determined, and contrary case law exists which is cited above. *See e.g. Shinyei Corp. of Am. v. U.S.*, 355 F.3d 1297, 1311 (Fed. Cir. 2004).

7

the current situation and protect the public interest by ensuring that recompense is available for unlawfully levied tariffs. [5]

**D.      This Court may issue a TRO without notice to Defendants.**

This Court may issue a TRO without notice to Defendants pursuant to Federal Rule of Civil Procedure 65(b)(1). Pursuant to Federal Rule of Civil Procedure 65(b)(1)(A) Plaintiff has averred in this Motion and in its verified complaint (*see* Compl. at ¶¶ 8, 18, 31-45) facts that clearly show that immediate and irreparable loss will result before Defendants can be heard in opposition. Additionally, pursuant to Federal Rule of Civil Procedure 65(b)(1)(B), the undersigned hereby certifies that no efforts have been made to provide notice to Defendant U.S. Customs and Border Protection prior to the filing of this motion. Notice is impracticable because the complaint initiating this action is being filed simultaneously to this motion, and no counsel for Defendant is presently known. Moreover, immediate and irreparable harm will occur absent the requested temporary restraining order, and any delay to provide notice would risk defeating the purpose of the relief sought. Accordingly, Plaintiff respectfully submits that this motion should be considered *ex parte* pursuant to Rule 65(b).

### V.      CONCLUSION

For the foregoing reasons, Plaintiff should be granted a TRO and preliminary injunction as set out in the attached proposed order.

---

[5] The need for a preliminary injunction could be avoided if Defendants were to stipulate that refunds would be paid without regard to liquidation status, or agreed to suspend liquidation of their own accord. *See* 19 U.S.C. § 1504(b)(2) and 19 C.F.R. § 159.12(a)(1)(ii).

Dated: February 27, 2026   **COZEN O'CONNOR**

*/s/ Thomas G. Wallrich*
Thomas G. Wallrich (MN Bar #0213354)
Heather L. Marx (MN Bar #321163)
150 South Fifth Street, Suite 1200
Minneapolis, MN 55402
(612) 260-9002
twallrich@cozen.com
hmarx@cozen.com

*Counsel for Plaintiff*

# Exhibit A

| 2025 IEEPA TOTALS PAID BY HEADING | |
|---|---|
| **HTSUS Heading** | **Amount Paid** |
| **99030101** | **$5,260,657.00** |
| Mar | $2,318,242.50 |
| Apr | $1,917,679.25 |
| May | $585,726.75 |
| Jun | $439,008.50 |
| **99030110** | **$1,723.25** |
| Mar | $1,445.50 |
| Apr | $277.75 |
| **99030120** | **$51,938.50** |
| Feb | $3,396.60 |
| Mar | $48,541.90 |
| **99030124** | **$741,621.60** |
| Mar | $89,989.40 |
| Apr | $364,351.20 |
| May | $158,829.00 |
| Jun | $128,452.00 |
| **99030125** | **$1,396,842.90** |
| Apr | $172,248.10 |
| May | $565,238.20 |
| Jun | $659,356.60 |
| **99030163** | **$142,008.75** |
| Apr | $24,263.75 |
| May | $117,745.00 |
| **99030101** | **$214,412.00** |
| Jul | $84,713.00 |
| Aug | $39,705.25 |
| Sep | $32,540.75 |
| Oct | $25,722.00 |
| Nov | $16,980.50 |
| Dec | $14,750.50 |
| **99030110** | **$1,706.60** |
| Sep | $940.80 |
| Oct | $765.80 |
| **99030124** | **$410,180.80** |
| Jul | $143,649.40 |
| Aug | $119,420.80 |
| Sep | $56,205.80 |
| Oct | $41,713.60 |
| Nov | $17,633.60 |

1

| | | |
|---|---|---:|
| | Dec | $31,557.60 |
| **99030125** | | **$1,088,642.90** |
| | Jul | $513,245.50 |
| | Aug | $358,668.60 |
| | Sep | $150,213.20 |
| | Oct | $26,704.90 |
| | Nov | $26,076.80 |
| | Dec | $13,733.90 |
| **99030177** | | **$723.20** |
| | Sep | $181.60 |
| | Nov | $359.20 |
| | Dec | $182.40 |
| **99030184** | | **$83,562.00** |
| | Sep | $33,012.75 |
| | Oct | $8,363.75 |
| | Nov | $16,957.00 |
| | Dec | $25,228.50 |
| **99030207** | | **$235.50** |
| | Sep | $103.20 |
| | Oct | $36.30 |
| | Nov | $54.00 |
| | Dec | $42.00 |
| **99030209** | | **$168.30** |
| | Sep | $45.40 |
| | Nov | $77.30 |
| | Dec | $45.60 |
| **99030220** | | **$97,013.70** |
| | Aug | $253.20 |
| | Sep | $23,257.65 |
| | Oct | $19,473.75 |
| | Nov | $15,378.00 |
| | Dec | $38,651.10 |
| **99030226** | | **$95,163.50** |
| | Aug | $13.25 |
| | Sep | $50,427.00 |
| | Oct | $6,320.25 |
| | Nov | $15,512.25 |
| | Dec | $22,890.75 |
| **99030227** | | **$2,943.10** |
| | Sep | $1,864.85 |
| | Oct | $104.69 |
| | Nov | $486.97 |

2

| | | |
|---|---|---:|
| | Dec | $486.59 |
| **99030256** | | **$7,630.65** |
| | Sep | $4,577.70 |
| | Oct | $2,507.25 |
| | Nov | $100.80 |
| | Dec | $444.90 |
| **99030258** | | **$4.68** |
| | Oct | $2.73 |
| | Dec | $1.95 |
| **99030260** | | **$5,698.40** |
| | Sep | $4,863.80 |
| | Nov | $713.80 |
| | Dec | $120.80 |
| **99030263** | | **$2,041.50** |
| | Sep | $790.25 |
| | Oct | $483.25 |
| | Nov | $407.75 |
| | Dec | $360.25 |
| **99030264** | | **$20,209.80** |
| | Aug | $8.55 |
| | Sep | $4,326.15 |
| | Oct | $1,774.80 |
| | Nov | $8,524.65 |
| | Dec | $5,575.65 |
| **99030266** | | **$2,974.20** |
| | Aug | $40.60 |
| | Sep | $1,971.30 |
| | Oct | $116.10 |
| | Nov | $487.80 |
| | Dec | $358.40 |
| **Grand Total** | | **$9,628,102.83** |

3

# Exhibit B

| 2026 IEEPA TOTALS PAID BY HEADING | |
|---|---|
| **HTSUS Heading** | **Amount Paid** |
| **99030101** | **$142,797.75** |
| Jan | $104,583.75 |
| Feb | $38,214.00 |
| **99030110** | **$33,559.40** |
| Jan | $30,878.40 |
| Feb | $2,681.00 |
| **99030124** | **$162,522.90** |
| Jan | $118,255.70 |
| Feb | $44,267.20 |
| **99030125** | **$80,918.10** |
| Jan | $60,364.30 |
| Feb | $20,553.80 |
| **99030177** | **$7.60** |
| Jan | $7.60 |
| **99030184** | **$281,608.75** |
| Jan | $137,488.50 |
| Feb | $144,120.25 |
| **99030207** | **$182.40** |
| Jan | $48.00 |
| Feb | $134.40 |
| **99030209** | **$7.70** |
| Jan | $1.90 |
| Feb | $5.80 |
| **99030220** | **$190,246.95** |
| Jan | $136,864.95 |
| Feb | $53,382.00 |
| **99030226** | **$283,268.75** |
| Jan | $137,488.50 |
| Feb | $145,780.25 |
| **99030227** | **$7,809.95** |
| Jan | $5,141.59 |
| Feb | $2,668.36 |
| **99030260** | **$11,030.40** |
| Jan | $4,829.80 |
| Feb | $6,200.60 |
| **99030263** | **$955.50** |
| Jan | $892.50 |
| Feb | $63.00 |
| **99030264** | **$155,545.35** |
| Jan | $102,961.35 |
| Feb | $52,584.00 |

1

| | | |
|---|---|---|
| **99030266** | | **$2,935.80** |
| Jan | | $2,181.70 |
| Feb | | $754.10 |
| **99030269** | | **$0.20** |
| Feb | | $0.20 |
| **99030280** | | **$24,886.65** |
| Jan | | $21,121.05 |
| Feb | | $3,765.60 |
| **99030283** | | **$1.80** |
| Feb | | $1.80 |
| **Grand Total** | | **$1,378,285.95** |

2